IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

PROVISUR TECHNOLOGIES, INC.,     )
     )
     Plaintiff,     )
     )
     v.     )     Case No. 21-cv-06113-SRB
     )
WEBER, INC., et al.,     )
     )
     Defendants.     )

## ORDER

Before the Court are Plaintiff Provisur Technologies, Inc. ("Plaintiff" or "Provisur") and Defendant Weber, Inc., Weber Maschinenbau GmbH Breidenbach, and Weber Maschinenbau GmbH Neubrandenburg's ("Defendants" or "Weber") claim construction briefs. (Docs. #85, 90, 115.) The purpose of this Order is to construe disputed terms in Plaintiff's U.S. Patent No. 8,408,109 ("the '109 patent").

### I. FACTUAL BACKGROUND

In this case ("*Provisur III*"), Plaintiff alleges that Defendants infringed and continue to infringe the '109 patent "by making, using, offering to sell, selling, and/or importing into the U.S. products that include, but are not limited to, the Weber Slicer S6, the Weber Slicer 904-02 (and later versions of the Weber Slicer 904), the Weber Slicer 905, and the Weber Slicer 906[.]" (Doc. #1, ¶ 41.)[1] "The '109 patent describes a food article slicing machine that can slice multiple food articles at once at independent rates while monitoring each food article to achieve optimal weight control and yield." (Doc. #1, ¶ 40.)

---

[1] This is the third patent infringement case filed in this Court by Plaintiff against Defendants. *See Provisur Technologies, Inc. v. Weber, Inc., et al.*, Case No. 19-cv-06021-SRB (W.D. Mo.) ("*Provisur I*"); *Provisur Technologies, Inc. v. Weber, Inc. et al.*, Case No. 20-cv-06069-SRB (W.D. Mo.) ("*Provisur II*"). Only those facts and issues necessary to resolve the disputed terms are discussed herein.

On August 18, 2022, Defendants filed an opening claim construction brief (Doc. #85) which requests the Court construe three disputed claim terms. Plaintiff filed its responsive brief on September 8, 2022 (Doc. #90), and Defendants filed a reply brief on February 20, 2023. (Doc. # 115). On April 4, 2023, the parties filed a Final Claim Construction Chart. (Doc. #125.) On April 11, 2023, the Court presided over a claim-construction hearing (i.e., *Markman* hearing). *See Markman v. Westview Instru., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); Patent L.R. 4.6.

The three disputed claim terms are as follows:

(1) "said second shaft independently operating concentrically within said hollow first shaft," (Claims 1, 6);

(2) "a first motor driving the hollow first shaft into rotation; and a second motor driving the second shaft into rotation," (Claims 1, 6); and

(3) "said withdrawn position being raised horizontally and recessed longitudinally toward said slicing station whereby food articles may pass into said slicing station," (Claim 17).

(Doc. #85, pp. 7, 10, 14; Doc. #90, pp. 7, 10, 15.)[2]

Upon review and consideration of the patent claims, specifications, and the prosecution history, in addition to the parties' claim-construction briefs, applicable law, and presentations by counsel, the Court hereby issues this Order to construe the disputed terms in the '109 patent. For the reasons discussed herein, the Court construes the terms as follows:

| DISPUTED TERMS | CONSTRUCTION |
|---|---|
| "said second shaft independently operating concentrically within said hollow first shaft" | **"the second shaft independently operating centered within the hollow first shaft"** |
| "a first motor driving the hollow first shaft into rotation; and a second motor driving the second shaft into rotation" | **Plain and ordinary meaning** |

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

| | |
|---|---|
| "said withdrawn position being raised horizontally and recessed longitudinally toward said slicing station whereby food articles may pass into said slicing station" | **"The food article gate is withdrawn when the gate is lifted away (raised horizontally) and moved out of the way (recessed longitudinally) so the food article may pass into the slicing station."** |

## II. LEGAL STANDARD

Claim construction, "including terms of art," is a matter of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–89 (1996)). This Court looks to the Federal Circuit for persuasive guidance when evaluating patent-related matters, *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 970 (8th Cir. 2015), and the following claim-construction analysis is guided by the Federal Circuit's landmark opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). When construing claims, the Court begins with the words of the claim, which define the invention and its scope. Claim terms "are generally given their ordinary and customary meaning"—that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations omitted).

In ascertaining the ordinary and customary meaning of a patent claim term, a court may consider various sources of information, which are traditionally categorized as either "intrinsic" or "extrinsic" evidence. *See id.* at 1314. Intrinsic evidence generally encompasses "the words of the claims themselves," the specifications of the patent, and the patent's prosecution history. *Id.* The specifications section of a patent, which describes the specific embodiments of the invention in a "full" and "exact manner," is "highly relevant to the claim construction analysis" and can be the "single best guide to the meaning of the disputed term." *Id.* at 1311–12, 1315 (citing 35 U.S.C. § 112); *accord Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)

Case 5:21-cv-06113-SRB   Document 130   Filed 04/11/23   Page 3 of 12

("The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis."). Additionally, the prosecution history of the patent, meaning the record of the proceedings before the U.S. Patent and Trademark Office ("PTO"), is also helpful in the claim-construction analysis and provides the Court with "evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317.

A court may also consider sources of extrinsic evidence when construing a claim term, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citation omitted). These sources of evidence are often utilized to "provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* at 1318. However, the intrinsic record remains more significant to determining the legally operative meaning of claim language, and extrinsic evidence cannot be used to "vary or contradict the claim language" itself. *Vitronics Corp.*, 90 F.3d at 158; *see also Phillips*, 415 F.3d at 1318 (noting "extrinsic evidence in general [i]s less reliable than the patent and its prosecution history in determining how to read claim terms").

## III. DISCUSSION

Defendants propose a construction for each disputed term. Plaintiff generally argues that the terms do not require further construction but also offers a proposed construction in the alternative. The parties argue that their respective constructions are supported by the intrinsic

evidence, extrinsic evidence, and would aid the Court and the jury in understanding the disputed

terms.  Each disputed term is addressed below.[3]

### A. Term I:  "said second shaft independently operating concentrically within said hollow first shaft"

The table below depicts the two competing constructions offered by the parties for the

plain and ordinary meaning of this term:

| PROVISUR'S PROPOSED CONSTRUCTION | WEBER'S PROPOSED CONSTRUCTION |
| --- | --- |
| a portion of the second shaft rotates inside of the hollow first shaft | said second shaft independently operating centered inside said hollow first shaft |

As illustrated above, Defendants' proposed construction is similar to the actual claim

language.  However, Defendants argue that "concentrically within" should be construed as

"centered inside."  (Doc. #85, p. 8.)  Defendants believe their construction is "consistent with the

way the words 'concentrically within' are used in the specification and prosecution history to

describe the relative configuration of the two shafts."  (Doc. #85, p. 8.)  Defendants also cite

dictionaries for the proposition that "the plain meaning of 'concentric' is that objects share a

common center."  (Doc. #85, p. 8) (internal citations omitted).

Plaintiff's proposed construction is not similar to the actual claim language.  Plaintiff's

proposal refers only to "a portion" of the second shaft, and does not include the "independently

---

[3] Defendants state that for purposes of construing the disputed claim terms, a person of ordinary skill in the art ("POSA") in the technical field of the '109 patent at the relevant time would typically have had: "(1) a bachelor's degree (or equivalent) in mechanical engineering (or a similar field) and at least two years of experience working on food processing and/or packaging systems (or in a similar field); or (2) at least seven years of experience working on food processing and/or packaging systems (or in a similar field)."  (Doc. #85, p. 6.)  Plaintiff states that with respect to the second disputed term, a POSA would "typically have at least an associate's degree and at least one year of experience working with high-speed food processing and packaging systems (or equivalent)."  (Doc. #90, p. 11 n.3.) In *Provisur I* and *II*, the Court adopted the same POSA advocated by Defendants in this case.  Plaintiff fails to explain why a different standard should apply in *Provisur III*, and the Court therefore adopts Defendants' standard. Nonetheless, the claim construction rulings in this Order would be the same under either standard.

operating" limitation.  Plaintiff also proposes that "concentrically within" be construed as "rotates inside." (Doc. #90, p. 8.)  According to Plaintiff, "this language is in the patent specification, which states 'the sleeve 1064 (the hollow first shaft) *rotates* independently of the round cross-section region 1072 of the spindle 1060 [the second shaft].'" (Doc. #90, p. 8) (internal citations omitted) (emphasis in original).  Plaintiff believes that "rotates inside . . . captures the claimed concept of 'operating concentrically within' by clarifying that the second shaft *rotates* inside the hollow outer shaft." (Doc. #90, p. 8) (emphasis in original).

Upon review, the Court primarily adopts Defendants' proposed construction because it comports most closely with the claim language and is reinforced by the intrinsic record.  The Court agrees with Defendants that the specification and prosecution history uses "concentrically within" to "describe the relative configuration of the two shafts." (Doc. #85, p. 8.)  For example, during the patent amendment process, "concentrically" was added "to more clearly describe the second shaft being concentric within the hollow shaft." (Doc. #115-1, p. 12.)  While less persuasive than intrinsic evidence, Defendants' extrinsic evidence also shows that a person of ordinary skill in the art would understand the term "concentrically within" to mean "centered inside" or "centered within."  Specifically, Defendants cite four dictionaries that define concentric as objects "having a common center." (Doc. #85-4, p. 4.)

Plaintiff's proposed construction—"a portion of the second shaft rotates inside of the first hollow shaft"—is rejected.  The Court agrees with Defendants that this proposal "completely removes any concept of the two shafts being concentric, and instead broadens the term to require only that a *portion* of one shaft is disposed anywhere within the other—not that they share the same center." (Doc. #85, p. 9) (emphasis in original).  For these reasons, the Court finds that Defendants' proposed construction of concentrically within is supported by both the intrinsic and

extrinsic record.  However, the Court finds that "centered within" should be used instead of "centered inside" to more closely track the claim language and to provide greater clarity for the jury.  *See 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 964 (D. Minn. 2005) (citing *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004)) (noting "the Court's fundamental duty in a patent case is to provide the jury with instructions adequate to ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims").

The parties' briefs also discuss the meaning of "independently operating."  Defendants' proposal includes that phrase and "leave[s] 'independently operating' to its plain meaning." (Doc. #115, p. 5.)  Plaintiff's proposed construction does not include "independently operating." Defendants argue that Plaintiff's "construction replaces the term 'independently operating' with the term 'rotates,' further rewriting the claim scope to impermissibly broaden it."  (Doc. #85, p. 9.)

Upon review, the Court finds that "independently operating" should not be eliminated and does not need further construction.  *See Merck & Co., Inc., v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").  Independently operating has a plain and ordinary meaning that is easily understood by an ordinary person skilled in the art.  There are not multiple ordinary meanings which necessitate construction by the Court.  *See O2 Micro*, 521 F.3d at 1361.  For all these reasons, and with minor modifications, the Court adopts Defendants' proposed construction of the first disputed term.

Consequently, the Court construes the first disputed term as follows:

7

| TERM | CONSTRUCTION |
|---|---|
| "said second shaft independently operating concentrically within said hollow first shaft" | "the second shaft independently operating centered within the hollow first shaft" |

**B. Term II: "a first motor driving the hollow first shaft into rotation; and a second motor driving the second shaft into rotation"**

The table below depicts the two competing constructions offered by the parties for the

plain and ordinary meaning of this term:

| PROVISUR'S PROPOSED CONSTRUCTION | WEBER'S PROPOSED CONSTRUCTION |
|---|---|
| a first motor driving the hollow first shaft into rotation through one or more connecting components; and a second motor driving the second shaft into rotation through one or more connecting components | a first motor having a gear that is enmesh with and turns a gear on the hollow first shaft; and a second motor having a gear that is enmesh with and turns a gear on the second shaft |

Defendants contend their proposed construction is supported by the patent specification

and prosecution history.  According to Defendants, the patent specification "explains that the

motors (which it refers to as servomotors) turn an enmeshed gear (referred to as a worm gear)

and that the worm gear in turn is enmesh with and turns another gear (referred to as a drive gear)

on the shaft and that this causes the spindle of the shaft to rotate and, therefore, allows the motor

to drive the shaft."  (Doc. #85, p. 10.)  Defendants believe their proposal should be adopted

because "each motor is associated directly with and directly drives its respective shaft."  (Doc.

#85, p. 11.)

Plaintiff argues this term does not require construction.  Plaintiff alternatively proposes a

construction that is similar to the claim language but adds the following conclusion—"through

one or more connecting components."  Plaintiff argues its proposal is supported by the patent

specification, prosecution history, and prior art.

8

Upon review, the Court finds this term does not require further construction. Defendants' proposed construction—"a gear that is enmesh with and turns a gear"—would be confusing to the jury. Plaintiff's proposed construction—"through one or more connecting components"—impermissibly adds claim language and is not necessary. Neither party has adequately shown why their proposed construction should be used instead of the claim as written.

The Court finds that the claim language itself—"a first motor driving the hollow first shaft into rotation; and a second motor driving the second shaft into rotation"—has a plain and ordinary meaning that is easily understood by an ordinary person skilled in the art. A jury will be able to understand this term without additional guidance from the Court, and there are not multiple ordinary meanings which necessitate construction by the Court. *See O2 Micro*, 521 F.3d at 1361. Therefore, no further construction of this term by the Court is required.

| TERM | CONSTRUCTION |
|---|---|
| **"a first motor driving the hollow first shaft into rotation; and a second motor driving the second shaft into rotation"** | **Plain and ordinary meaning** |

**C. Term III: "said withdrawn position being raised horizontally and recessed longitudinally toward said slicing station whereby food articles may pass into said slicing station"**

The table below depicts the two competing constructions offered by the parties for the plain and ordinary meaning of this term:

| PROVISUR'S PROPOSED CONSTRUCTION | WEBER'S PROPOSED CONSTRUCTION |
|---|---|
| a position of the food article gate allowing food articles to pass into said slicing station, where the food article gate rotates from its closed position into its withdrawn position | the withdrawn position is formed when the gate is moved along two axes: lifted up and retracted towards the slicing station allowing food articles to pass into said slicing station |

9

Defendants state that their "proposed construction reflects Weber's best effort to study the specification, figures, and prosecution history and ascribe some intelligible meaning to this veritable word salad." (Doc. #85, p. 14.) Defendants argue in part that "said withdrawn position being" refers to "what constitutes the withdrawn position, as opposed to something that happens to the withdrawn position." (Doc. #85, pp. 14-15.) Defendants construe "these words as denoting the movement of the stop gate that *forms* the withdrawn position. In this position, the stop gate is out of the way of the food articles, which allows them to pass into the slicing station." (Doc. #85, p. 14-15) (emphasis supplied). Defendants believe "the larger descriptor 'recessed longitudinally toward said slicing station' . . . appears to describe a motion along the longitudinal axis in the direction of the slicing station, into a position that is recessed relative to the surrounding surface area, i.e. the stop gate tucks into the surrounding structures." (Doc. #85, p. 15.) Defendants cite diagrams, specification language, and patent figures to support their proposed construction.

In response, Plaintiff argues in part that "Defendants' proposed construction is facially wrong and confusing. Defendants . . . essentially strik[e] out the term the drafter used ('horizontally') and replac[e] it with *vertical* movement ('lifted up')." (Doc. #90, p. 16) (emphasis in original). Plaintiff further argues that "[w]hile Defendants leave the term 'towards [the] slicing station' in their construction, the garage door motion they point to moves the gate *away* from the slicing station." (Doc. #90, p. 16) (emphasis in original).

Upon review of the record and the parties' arguments, the Court finds this is a disputed term that requires construction. The Court further finds that both parties' proposed constructions are confusing and will not assist the jury. After considering the entire record, the Court construes the third term as follows: "The food article gate is withdrawn when the gate is lifted

away (raised horizontally) and moved out of the way (recessed longitudinally) so the food article

may pass into the slicing station."

The Court's construction incorporates the actual claim language while also providing

clarity for the jury. This construction is also consistent with the specification language and

patent figures. At this stage of litigation, the Court rejects Defendants' argument that this third

disputed term is "insoluble" and "indefinite." *See Microsoft Corp. v. i4i Ltd. P'Ship*, 564 U.S.

91, 95 (2011) (recognizing that a patent may be invalidated only through "clear and convincing"

evidence).

For these reasons, the Court construes the third disputed term as follows:

| TERM | CONSTRUCTION |
|---|---|
| "**said withdrawn position being raised horizontally and recessed longitudinally toward said slicing station whereby food articles may pass into said slicing station**" | **"The food article gate is withdrawn when the gate is lifted away (raised horizontally) and moved out of the way (recessed longitudinally) so the food article may pass into the slicing station."** |

## D. Additional Terms

Finally, Defendants' reply brief raises additional terms that may require a claim

construction. Defendants state that "both parties have agreed that the term 'a first conveying

surface on top of the first endless belt/a second conveying surface on top of the second endless

belt' should be construed consistently with however the" Patent Trial and Appeals Board

("PTAB") "construes this disputed term." (Doc. #115, p. 10.) Defendants also identify three

additional terms that are before the PTAB.[4] Defendants argue that "[b]ecause these terms have

---

[4] These three terms are: (1) "non-adjacent side;" (2) "the machine control having instructions ending machine slicing of all loaves on the food article feed apparatus when the shortest food article is sliced to a minimum length;" and (3) [third/third upper] conveyor for moving a third food article," "[fourth/fourth upper] conveyor for moving a fourth food article," "said [fourth/fourth upper] conveyor driven by a second hollow shaft," and "said [third/third upper] conveyor driven by a third shaft; said third shaft operating within said second hollow shaft." (Doc. #115, p. 12.)

not been briefed to this Court (either because the parties agreed to adopt the PTAB's

construction or because they were only raised in Provisur's POR after Weber filed its opening

claim construction brief), and further because it is not clear how the PTAB will construe the

terms, the most prudent course of action is to await the PTAB's Final Written Decision and then

revisit the scope of the claims with a view towards promoting consistency where appropriate."

(Doc. #115, p. 11.)

Upon review, the Court finds the additional terms identified by Defendants are not ripe

for a proper claim construction. The current record does not show a material dispute regarding

these terms, and they have not been fully briefed by the parties. These additional terms were

also not argued during the *Markman* hearing. As a result, and because some or all of these terms

appear to be before the PTAB, the Court declines to construe them at this time.

**IV. CONCLUSION**

Accordingly, the Court ORDERS the constructions of the disputed terms as described

herein.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>April 11, 2023</u>